Joseph R. Saveri (State Bar No. 130064)
jsaveri@saverilawfirm.com
Steven N. Williams (State Bar No. 175489)
swilliams@saverilawfirm.com
Anna-Patrice Harris (State Bar No, 309022)
aharris@saverilawfirm.com
Christopher K.L. Young (State Bar No. 318371)
cyoung@saverilawfirm.com
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1000
San Francisco, California 94108
Telephone:  (415) 500-6800
Facsimile:   (415) 395-9940

Jeff S. Westerman (State Bar No. 94559)
jwesterman@jswlegal.com
**WESTERMAN LAW CORP.**
16133 Ventura Blvd., Suite 685
Encino, CA 91436
Telephone: (310) 698-7450

Stuart G. Gross
sgross@grosskleinlaw.com
**GROSS & KLEIN LLP**
The Embarcadero
Pier 9, Suite 100
San Francisco, CA 94111
Telephone: (415) 671-4628 (x101)
Facsimile: (415) 480-6688

*Attorneys for Plaintiff,*
*Ketcham Tackle LLC and the Proposed Class*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **KETCHAM TACKLE LLC,** on behalf of itself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> **AMPLIFY ENERGY CORP., BETA OPERATING COMPANY, LLC; and SAN PEDRO BAY PIPELINE COMPANY; and DOES 1-25** <br><br> Defendants. | Case No. <br><br> **CLASS ACTION COMPLAINT** <br><br> JURY TRIAL DEMANDED |

# TABLE OF CONTENTS

INTRODUCTION ................................................................................. 1

JURISDICTION AND VENUE .......................................................... 4

THE PARTIES .................................................................................... 4

FACTS ................................................................................................. 6

    Rupture in the Affected Pipeline ................................................. 6

    Delay in Safely Shutting Down the Affected Pipeline ................. 7

    Defendants are Repeat Offenders ................................................ 9

    Beach Closure Adversely Impacted Locals and Businesses ....... 13

PLAINTIFF'S FACTS ...................................................................... 16

    Economic Harm .......................................................................... 16

CLASS ACTION ALLEGATIONS.................................................. 16

CAUSES OF ACTION ...................................................................... 19

    FIRST CAUSE OF ACTION (Strict Liability under the Lempert-Keene-Seastrand Oil Spill Prevention and Response Act, Government Code Section 8670, et seq.)....................................... 19

    SECOND CAUSE OF ACTION (Strict Liability-Ultrahazardous Activity) ......................................................................................22

    THIRD CAUSE OF ACTION (Negligence) ............................24

    FOURTH CAUSE OF ACTION (Public Nuisance - Civ. Code §§ 3479 et seq).............................................................................. 25

    FIFTH CAUSE OF ACTION (Request for Monitoring of Contamination) ........................................................................26

PRAYER FOR RELIEF ................................................................... 27

DEMAND FOR JURY TRIAL ........................................................30

i

Plaintiff Ketcham Tackle LLC ("KETCHAM TACKLE"), on behalf of itself and all others similarly situated ("Class"), brings this action for damages and equitable relief against Defendants AMPLIFY ENERGY CORPORATION ("AMPLIFY"); BETA OPERATING COMPANY, LLC ("BETA"); San Pedro Bay Pipeline Company ("PIPELINE COMPANY"); and DOE CORPS 1-25, collectively "Defendants" for violations of state law. The allegations herein are made based on Plaintiff's personal knowledge as to the allegations pertaining to itself, and upon information and belief based upon the reasonable investigation of counsel as to all other matters.

## INTRODUCTION

1.      This case is brought to recover damages suffered by the businesses in the communities affected by the massive oil leak plaguing the coasts of Los Angeles County and Orange County, California. On October 2, 2021, Defendants AMPLIFY, BETA, and PIPELINE COMPANY's San Pedro Bay Pipeline ("Affected Pipeline") developed a rupture, resulting in a release of crude oil into the San Pedro Bay, an inlet of the Pacific Ocean ("Spill"). The Affected Pipeline failed offshore near the cities of Long Beach and Huntington Beach, California off the coast of Southern California. The Affected Pipeline is approximately 17.5 miles in length, beginning offshore at Platform Elly and traveling onshore to the BETA Pump Station in the City of Long Beach, California. Since the oil spill was first reported on October 2, 2021, from Elly, an AMPLIFY-owned and BETA OFFSHORE/PIPELINE COMPANY operated rig off

CLASS ACTION COMPLAINT

the coast of California, Orange County beaches have been shut down from Huntington Beach to Dana Point. Harbors in Newport Beach and Laguna Beach have also been closed to all boat traffic.

2.    According to federal transportation investigators, the pipe was split open, and a nearly mile-long section apparently pulled along the ocean floor, possibly by shipping traffic. Defendants were negligent in failing to monitor for, detect, and react properly to the damaged pipeline

3.    At least 144,000 gallons leaked into the Pacific Ocean after the Defendants' breach on October 2, 2021. By the next morning, the oil had reached the shore, fanning out over an area of about 5.8 nautical miles and entering the Talbert Marshlands and the Santa Ana River Trail, according to the city of Huntington Beach. At present major containment operation is ongoing and the businesses in the area that rely upon the Pacific Ocean are shut down.

4.    Although Defendants received a low-pressure alarm on the Affected Pipeline at 2:30 PDT on October 2, 2021, indicating a possible failure, Defendants waited more than three hours before they shut down the Affected Pipeline at 6:01 PDT. Defendants then waited another three hours to report this breach to the National Response Center ("NRC").

5.    By October 6, 2021, dead birds and fish were washing up on shore along the miles of black-splotched shore as rescue workers rushed to help the suffering animals.

CLASS ACTION COMPLAINT

6.      The conduct of each Defendant was a substantial factor in causing and exacerbating the breach, and consequently in causing damage to the communities and businesses which are along the coast and depend upon the ocean and shoreline for their livelihoods – cruise companies, marinas, and fishermen for example local government representatives call this one of the most devasting situations that the community has dealt with in decades,[1] and it is reminiscent of the 1969 Santa Barbara Channel oil spill when Union Oil's Platform A blew out. And this failure by Defendants is just the latest instance of them flagrantly violating reasonable standards of due care while choosing profits over safety.

7.      As alleged herein, Plaintiff has suffered and is reasonably certain to suffer in the future significant economic losses to its business as a direct, legal, and foreseeable result of the damage the Spill has caused and will continue to cause off the coast of Southern California. Moreover, the Spill has caused and is reasonably certain to cause in the future significant harm to the habitat of the affected area that Plaintiff and the Proposed Class not only depend on for their livelihood, but which they also enjoy and seek to protect, as stewards.

---

[1] Neil Vigdor, Melina Delkic, *'Major' Oil Spill Off California Coast Threatens Wetlands and Wildlife*, New York Times (Updated October, 5, 2021), https://www.nytimes.com/2021/10/03/us/pipeline-broken-oil-pacific-ocean.html.

CLASS ACTION COMPLAINT

## JURISDICTION AND VENUE

8.      Pursuant to 28 U.S.C. § 1332(d)(2), this Court has subject-matter jurisdiction because Plaintiff alleges that the amount in controversy exceeds the sum of $5,000,000, in the aggregate and there are over 100 members of the Class that are known to exist. Furthermore, at least one Plaintiff is from a different state from at least one Defendant—namely, AMPLIFY, which is headquartered in Houston, Texas.

9.      This Court also has jurisdiction because Defendants committed the acts and omissions out of which this action arises in California. Furthermore, Plaintiff's state law claims form part of the same case or controversy as their federal claims under Article III of the United States Constitution.

10.      Venue is proper in this District under 28 U.S.C. § 1391(a) through (d) because Plaintiff resides in this district and are therefore a resident of California, and because the acts, transactions, and occurrences at issue in this case took place within this District.

## THE PARTIES

11.      Plaintiff KETCHAM TACKLE operates a bait and tackle business in Costa Mesa, California and derives a significant portion of its revenue, over 90%, from tackle and fishing gear used for saltwater fishing in the Pacific Ocean. KETCHAM TACKLE outfits many of the sport fishing boats that operate out of Orange County, a significant

CLASS ACTION COMPLAINT

sport fishing industry. These boats and other customers of KETCHAM TACKLE can no longer fish in the area.

12.     Plaintiff brings this class action on behalf of itself, and all others similarly situated, whose livelihoods, source of income, and quality of business will be impacted by the Spill.

13.     Defendant AMPLIFY is a Delaware corporation with its principal place of business located at 500 Dallas Street, Suite 1700, Houston, Texas. AMPLIFY owns subsidiary BETA, a co-defendant in this Action, who is responsible for the management and/or ownership of the Elly oil rig. It also holds assets in Oklahoma, the Rockies, federal waters offshore in Southern California, East Texas/North Louisiana, and the Eagle Ford.

14.     Defendant BETA is a limited liability corporation with its principal place of business located 11 W. Ocean Blvd., Suite 1240, Long Beach, California. It operates the Affected Pipeline as a subsidiary of Defendant AMPLIFY and has been cited by federal regulators for more than 100 violations over the past 11 years. It is also responsible for the daily operations and management of the Elly oil rig.

15.     Defendant PIPELINE COMPANY is located in Long Beach, California, and it owns and operates the Affected Pipeline. It is registered in California and is a wholly owned subsidiary of AMPLIFY.

CLASS ACTION COMPLAINT

16.     At all relevant times, each of the Defendants was an agent, servant, partner, alter ego, and/or joint venturer of his/her/its co-Defendant(s) in the acts and omissions that have caused the injuries to Plaintiff and was at all times, acting within the course and scope of said agency, service, partnership, conspiracy, alter ego status, and/or joint venture.

17.     The true names and capacities, whether individual, corporate, associate or otherwise of the Defendants DOES 1 through 25, inclusive, are unknown to Plaintiff who therefore sues said Defendants by such fictitious names pursuant to Code of Civil Procedure § 474. Plaintiff further alleges that each of said fictitious Defendants is in some manner responsible for the acts and occurrences hereinafter set forth. Plaintiff will amend this Complaint to show their true names and capacities when the same are ascertained, as well as the manner in which each fictitious Defendant is responsible for the actions alleged herein.

## FACTS

### Rupture in the Affected Pipeline

18.     The Affected Pipeline is approximately 17.5 miles in length. It begins offshore at Platform Elly and travels onshore to the Beta Pump Station in the City of Long Beach, California.

19.     At around 2:30 PDT on October 2, 2021, the Affected Pipeline ruptured. This rupture was caused by, and the leak from the rupture was exacerbated by, the acts,

CLASS ACTION COMPLAINT

errors and omissions of Defendants as set forth in this Complaint. Prior to the rupture, the line was reported to be operating at approximately 300-400 pounds per square inch gauge.

### Delay in Safely Shutting Down the Affected Pipeline

20.     As mentioned hereinabove, at 2:30 PDT on October 2, 2021, BETA's control room personnel received a low-pressure alarm on the Affected Pipeline, indicating a possible failure.

21.     However, BETA did not shut the spewing pipeline down until approximately 6:01 PDT, that is, over three hours later. At 12:07 EDT on October 2, 2021 (NRC Report No. 1318463), over six hours after the initial alarm and three hours after the company shut down the pipeline, BETA reported the Spill to the NRC indicating there was a release of crude oil in the vicinity of its pipeline near Platform Elly.

22.     At that point, the Coast Guard had been on the water for a couple hours and discovered the spill as AMPLIFY was making the report.

23.     This inexcusable three-hour delay in reporting this ecological disaster exacerbated the broader environmental impact of the Spill, the destruction to marine life, and the degradation in the quality of life of those relying on the coast for their sustenance.

CLASS ACTION COMPLAINT

24.     BETA's and PIPELINE COMPANY's spill-response plan calls for the immediate notification of a spill. Criminal charges can be brought when a company unduly fails to notify federal and state officials of a spill.



Close-up of the affected area of the Spill (see below three (3) more images)



CLASS ACTION COMPLAINT





### **Defendants are Repeat Offenders**

25.     Since 1980, BETA has been cited at least 125 times for safety and

environmental violations that were severe enough to stall drilling operations. As

mentioned hereinabove, the Bureau of Safety and Environmental Enforcement, a federal

agency that regulates the offshore oil and gas industry, shows that BETA has been fined

CLASS ACTION COMPLAINT

a total of $85,000 for three separate accidents. Furthermore, two of these violations were from 2014, when a worker who was not wearing proper protective equipment was shocked with 98,000 volts of electricity, and a separate incident when crude oil was released through a boom where a safety device had been improperly bypassed.

26.     Although AMYPLIFY CEO Martyn Willsher said that the pipeline and three other platforms were shut down immediately upon the sound of the alarm, this does not seem to be correct. According to an official investigation, Defendants received a pressure-drop alarm at 2:30 PDT, but the pipeline carrying crude oil was not shut down until about 6:01 PDT. Furthermore, this was reported to the NRC at least six hours later. Although Willsher acknowledged that Defendants' equipment was supposed to help detect spills, it did not give them notice of any leak. In addition to a continuing record of violations and non-compliance, the present breach is a stark reminder of the Defendants' callousness in maintaining their equipment and compliance with adequate standards of environmentally sustainable business operations.

27.     In addition to this failure to shut down the Affected Pipeline as soon as the alarm sounded, Defendants failed to fulfil their duty to inspect the Affected Pipeline for cracks and fissures, which eventually resulted in the leakage of nearly 144,000 gallons of crude oil into the ocean waters.

28.     According to reports, well over fifty vessels were waiting to berth in San Pedro Bay following last week's oil spill. Owing to the COVID-19 pandemic, this

CLASS ACTION COMPLAINT

backlogging of ships also resulted in larger ships anchoring closer to pipelines, internet cables, and other hazards due to a paucity of space.  According to the Pipeline and Hazardous Materials Safety Administration ("PHMSA"), Office of Pipeline Safety ("OPS") in its Corrective Action Order ("CAO"), preliminary reports indicated that the failure may have been caused by passing ship's anchor that hooked the pipeline, causing a partial tear.[2]



Source: MarineTraffic; BETA OFFSHORE, LLC. Ocean Energy management

[2] Amplify Energy Corp.; CPF No. 5-2021-054-CAO (Dep't of Transportation Pipeline and Hazardous Materials Safety Administration October 4, 2021) (corrective administrative order).

CLASS ACTION COMPLAINT

29.     Despite adequate knowledge of the situation and the reasonable probability of such an instance to occur during port congestion, Defendants failed to reasonably inspect the Affected Pipeline, which carries ultra-hazardous materials, and was severely damaged at the time of the contaminating breach. Defendants were fully aware that the ports were beset by long backups with vessels spread across the coast. Yet, in line with their callous behavior exhibited in the past, Defendants failed to implement proper procedures to protect against the increased risk of damage to the pipeline nor to remedy the unstable Affected Pipeline adequately and reasonably through effective regular inspections.

30.     Defendants' flippant approach towards conducting business is buttressed by its history of acquiring bankrupt companies and facilitating a low-capital expenditure driven budget to increase production. In March 2020, AMPLIFY announced that it had "lowered its 2020 capital expenditure budget by approximately $17 million or 37% in response to the recent severe decline in commodity prices and OPEC's decision to increase production.  Previously known as Memorial Production Partners until 2017, the company entered bankruptcy restructuring with $1.3 billion in debt.  Subsequently, it emerged a year later with $430 million in debt and a peppering of assets in Texas, Louisiana, the Rockies, and offshore California. Unequivocally, Defendants have found numerous ways to ensure least capital expenditure in running their operations, which has

CLASS ACTION COMPLAINT

resulted in an exacerbated disaster—a consequence of blatant negligence and human error.

## Beach Closure Adversely Impacted Locals and Businesses

31. As oil washed up on the shores of Orange County, various city and state beaches across the area were closed, starting October 2. According to Huntington Beach Mayor Kim Carr, the beaches of the community nicknamed "Surf City" could remain closed for weeks or even months. The oil created a miles-wide sheen in the ocean and washed ashore in sticky black globules.

32. The plume has drifted as far south as Dana Point, shutting down harbors from Newport to Dana Point. This is further exacerbated by the southern swell current, which is carrying the oil further south. Newport Beach offered some access to the sands, but not within the waters. Vessels within Newport Harbor can continue operating in the harbor, but boats are not allowed in or out to keep them from spreading oil.

33. The damage in Newport Beach is so far concentrated on the west side from the Santa Ana River down to 52nd Street but that will spread. The restrictions on entering the waters because of the Spill have affected numerous business owners, locals, and dependent livelihoods. The tourism/hospitality market in the affected areas has taken a huge hit following beach closures. Many such local businesses similarly situated as Plaintiff have also had to shut down their business after the Newport Harbor was ordered closed on Oct. 4, 2021. Many more are unsure of how long the closure will last

CLASS ACTION COMPLAINT

or how long their businesses will be impacted. Furthermore, there is a looming worry that the shutdown will severely impact those employees who work on hourly wages and may not even be able to pay their rents.

34.    Apart from this loss or depletion of livelihoods, the true long term environmental impacts of this shocking disaster are yet to be gauged. According to Andrea Bonisoli Alquati, professor of biological science at Cal Poly Pomona, while the fauna might not look visibly oiled, the exposure they get subtly through their diet or because of physical contact later on might affect their physiology and translate into a lower reproductive success—therefore lowering the chances of the population to persist in the future.



Source: Yahoo! News

CLASS ACTION COMPLAINT



Source: New York Daily News



Source: Orange County Register

15

1

2

## PLAINTIFF'S FACTS

### Economic Harm

3      35.     On October 3, 2021, the city of Laguna Beach announced that all beaches

4    would close to the public beginning at 21:00 PDT, while Newport Beach issued an

5    advisory warning people to avoid contact with ocean water and areas of beach impacted

6    by oil. Furthermore, sections of the shoreline at Huntington Beach closed starting

7    October 2, with Mayor Kim Carr describing the spill as a "potential ecological disaster."

8      36.     As a direct result of the Defendants' breach and subsequent Spill, access to

9    all local beaches in Newport Beach has been restricted for an indefinite period of time.

10   This restriction eliminates the primary source of business for Plaintiff, that is supplying

11   sport fishing boats and recreational fishing customers.  Plaintiff derives over 90% of its

12   business from sales for saltwater fishing. This further prevents Plaintiff from earning

13   income and making profits that it could have reasonably earned or accrued absent

14   Defendants' breach. Since Plaintiff operates 7 days a week, at present, it has already

15   incurred significant losses beginning October 2.

16     37.     For this reason, Defendants' acts and omissions have and will directly as

17   well as proximately cause medium, short, long-term economic damages to Plaintiff.

18                        ### CLASS ACTION ALLEGATIONS

19     38.     Plaintiff brings this action on its own behalf and as representatives of a class

20   consisting of all local business owners who derive more than 25% of their revenues from

CLASS ACTION COMPLAINT

the Pacific Ocean, San Pedro Bay, and the surrounding environs in Los Angeles, Orange, and San Diego Counties California ("Class").

39.     The Class is so broad and numerous that joinder of all members is impracticable. Although its exact number is unknown, it is estimated that there are more than 100 class members.

40.     Plaintiff is a member of the Class, and its claims are typical of the claims of all members.

41.     Plaintiff will fairly and adequately protect the interests of all of the Class, and the interests of each are coincident and not antagonistic with those of the remainder of the Class.

42.     Plaintiff is represented by counsel experienced with class action and complex litigation and in the prosecution of violations of law arising out of large-scale environmental pollution.

43.     There are common questions of law and fact common to the Class in relation to their claims against Defendants, including, but not limited to:

(a) Whether the piping of toxic petroleum products through the San Pedro Bay constitutes an ultra-hazardous activity, and thus whether Defendants are strictly liable for any harm flowing from such activity;

CLASS ACTION COMPLAINT

(b) Whether Defendants were negligent, reckless, willful, wanton or malicious in their conduct which resulted in the discharge of petroleum products into and upon the Pacific Ocean, San Pedro Bay, and the surrounding environs in Los Angeles, Orange, and San Diego Counties California;

(d) Whether Defendants have created a nuisance by causing or contributing to the discharge of hundreds of gallons of petroleum products into and upon the Pacific Ocean, San Pedro Bay, and the surrounding environs in Los Angeles, Orange, and San Diego Counties California;

(e) Whether such violations of law are the direct and proximate cause of the economic injuries suffered by the Plaintiff and the Class;

(f) Whether such violations of law were a substantial factor in causing injury to Plaintiff and the Class;

(g) Whether the wrongful acts and/or omissions of Defendants warrants creation of a monetary fund for future monitoring, testing, evaluation and assessment of the health of the Southern Californian marine habitat and local livelihoods impacted by the Spill;

(h) Whether injunctive or other equitable relief for the benefit of the Class is appropriate; and

(i) Whether the wrongful acts and/or omissions of Defendants warrant the award of punitive and/or other exemplary damages.

CLASS ACTION COMPLAINT

44.    These and other common questions of law and fact predominate over questions affecting only individual members.

45.    A class action is superior to other methods of adjudication for a fair and efficient administration of this controversy. Prosecution of these claims within the procedural device of a class action will reduce the possibility of repetitious litigation and conflicting results, while producing redress for claims too small to support the expense of individual, complex litigation.

46.    Individual adjudications of Class member claims, which would as a practical matter be dispositive of the interests of other members not parties to the action, might substantially impair or impede the ability of the absent members to protect their interests, particularly in regard to claims against Defendants for punitive damages.

47.    Individual adjudications of Class member claims would also create the possibility of conflicting results, particularly on issues related to the apportionment of fault and responsibility amongst the Defendants, and thus be detrimental to the interests of the Defendants.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**(Strict Liability under the Lempert-Keene-Seastrand Oil Spill Prevention and Response Act, Government Code Section 8670, *et seq.*)**

48.    Plaintiff re-alleges and repleads the foregoing paragraphs as though set forth fully herein.

CLASS ACTION COMPLAINT

49.     The Lempert-Keene-Seastrand Oil Spill Prevention and Response Act ("Lempert-Seastrand Act") provides that "[a]ny responsible party, as defined in Section 8670.3, shall be absolutely liable without regard to fault for any damages incurred by any injured party which arise out of, or are caused by, the discharge or leaking of oil into or onto marine waters." Cal. Gov't Code Section 8670.56.5(a).

50.     Defendants, at the time of the Spill on October 2, 2021, were and continue to be the owners, operators, and/or lessees of Elly and the Affected Pipeline, and/or the petroleum products transported in the Affected pipeline that ruptured and caused the Spill.

51.     Defendants are "responsible parties," within the meaning of Gov't Code § 8670.3(w), and therefore "absolutely liable without regard to fault for any damages incurred by any injured party which arises out of, or are caused by, the discharge or leaking of oil into or onto marine waters." Gov't Code § 8670.56.5.

52.     The San Pedro Bay, the waters off the coast of Los Angeles County, Orange County and San Diego County and surrounding ocean areas are "marine waters." *Id*.,§ 8670.3(i).

53.     The petroleum product and particularly, the crude oil discharged into the Pacific Ocean, San Pedro Bay, and the surrounding environs in Los Angeles, Orange, and San Diego Counties California is "oil," which is defined as "any kind of petroleum,

CLASS ACTION COMPLAINT

liquid hydrocarbon, or petroleum products or any fraction or residues therefrom," including "crude oil." *Id.*, § 8670.56.5. Gov't Code § 8670.3(n).

54. The Spill, which entails the discharge of nearly 144,000 gallons of crude oil into the Pacific Ocean, San Pedro Bay, and the surrounding environs in Los Angeles, Orange, and San Diego Counties California is "Spill" or "discharge" which means any release of at least one barrel (42 gallons) of oil into marine waters that is not authorized by any federal, state, or local government entity. § 8670.3 (aa).

55. The contamination caused by the discharge of petroleum product into or upon the Pacific Ocean, San Pedro Bay, and the surrounding environs in Los Angeles, Orange, and San Diego Counties California injured, destroyed, caused to be lost, and/or impaired the use of natural resources on which Plaintiff and the Class depend for their livelihood as participants in the tourism/hospitality market in Southern California. Plaintiff's and the Class's dependence upon these natural resources constitute at least 25% of their earnings during applicable seasons for such resources.

56. The injury, destruction, loss, and/or impairment of usability of these natural resources has caused Plaintiff and the Class to lose profits and will cause future losses of profits by Plaintiff and the Class and/or impairment of their earning capacities.

57. The injury, destruction, loss, and/or impairment of usability of these natural resources has also caused, and will cause, Plaintiff and the Class losses of net profits.

CLASS ACTION COMPLAINT

1  58.    The likely long-lasting effects of the contamination of the discharge of crude

2  oil into the Pacific Ocean, San Pedro Bay, and the surrounding environs in Los Angeles,

3  Orange, and San Diego Counties California on the marine ecosystems and ocean waters,

4  on which Plaintiff's and the Class's livelihoods depend, requires that Plaintiff and the

5  Class continue future monitoring and testing activities in order to ensure that such

6  natural resources are not further harmed in the future as a result of the Spill.

7  59.    In doing the acts herein alleged, Defendants, and each of them, acted

8  willfully, wantonly, with oppression, fraud, and/or malice, and with a conscious

9  disregard of the rights and safety of others, as set forth herein.

10  60.    WHEREFORE, Plaintiff prays for judgment as set forth below.

## SECOND CAUSE OF ACTION
### (Strict Liability-Ultrahazardous Activity)

13  61.    Plaintiff re-alleges and repleads the foregoing paragraphs as though set forth

14  fully herein.

15  62.    Defendants, in transporting millions of gallons of petroleum product in a

16  pipeline situated below the San Pedro Bay, were engaged in an abnormally dangerous and

17  ultra-hazardous activity. Furthermore, and as alleged hereinabove, Defendants' callous

18  approach towards mandatory inspections and maintenance of the Affected Pipeline

19  shows a blatant dereliction of their duty to exercise reasonable care in the manufacture,

20  maintenance, and operation of the Affected Pipeline.

63.     Defendants had a heightened duty of care to Plaintiff and the Class because of the great danger associated with transporting oil so near to pristine coastal residential areas and local business properties along the Southern Californian coast. Furthermore, Defendants were fully aware that due to acute port congestion, transiting ships continued to anchor close to the Affected Pipeline. Defendants' conduct served as a direct and legal cause of the discharge and dispersion of hundreds of gallons of crude oil into stretch of California's Pacific coast, from Huntington Beach to Newport Beach, as well as the surrounding region, which is the kind of harm to be anticipated as a result of the risk created by the ultra-hazardous activity.

64.     Defendants breached the duty they owed to Plaintiff and members of the Class when they failed to exercise reasonable care in the manufacture, maintenance, and operation of the Affected Pipeline, which conduct resulted in entry, intrusion, or invasion on Plaintiff's and Class Members' real properties.

65.     Defendants knew or should have known that their conduct would foreseeably result in a disastrous oil spill, causing damage to the real properties and economic interests of persons in the area affected by the Spill.

66.     As a direct and legal cause of the Defendants wrongful acts and/or omissions herein above set forth, Plaintiff and/or the Class have suffered and will suffer economic and non-economic harm, injury, and/or losses as herein above set forth.

CLASS ACTION COMPLAINT

67.     In doing the acts herein alleged, Defendants, and each of them, acted willfully, wantonly, with oppression, fraud, and/or malice, and with a conscious disregard of the rights and safety of others, as set forth herein.

68.     WHEREFORE, Plaintiff prays for judgment as set forth below.

### THIRD CAUSE OF ACTION
### (Negligence)

69.     Plaintiff re-alleges and repleads the foregoing paragraphs as though set forth fully herein.

70.     Defendants negligently, grossly negligently, recklessly, carelessly and/or unlawfully owned, operated, controlled, managed, and/or maintained the Elly Rig and Affected Pipeline so as to cause the Spill and preceding and subsequent events herein described that exacerbated the Spill's impact. This blatant negligence legally caused harm, injury, and/or damage to Plaintiff and/or the Class which are hereinabove set forth.

71.     As a direct and legal cause of the Defendants' wrongful acts and/or omissions, Plaintiff, the Class, and the environment have suffered and will suffer as set forth herein.

72.     In doing the acts herein alleged, Defendants, and each of them, acted willfully, wantonly, with oppression, fraud, and/or malice, and with a conscious disregard of the rights and safety of others, as set forth herein.

CLASS ACTION COMPLAINT

73.     WHEREFORE, Plaintiff prays for judgment as set forth below.

## FOURTH CAUSE OF ACTION
### (Public Nuisance - Civ. Code §§ 3479 et seq)

74.     Plaintiff re-alleges and repleads the foregoing paragraphs as though set forth fully herein.

75.     Defendants have created a condition that affects a substantial number of businesses in the affected area similarly situated to Plaintiff; and a condition which would reasonably annoy and disturb an ordinary person.

76.     The seriousness and/or gravity of the harm outweighs the social utility of Defendants' conduct.

77.     Plaintiff and the Class suffered harm and injury to their economic livelihood and other unique interests as local business owners to which they did not consent, and which is different from the type of harm which is suffered by the general public. This type of harm is foremostly categorized as that being faced by local businesses/local business owners, who derive their source of livelihood from the coast in particular. The said type of harm extends particularly to economic harms caused by the curtailment of business operations and the stoppage of a regular flow of income starting October 2, 2021, that is, the date of Defendants' breach.

CLASS ACTION COMPLAINT

78.     As a direct and legal cause of the Defendants' wrongful acts and/or omissions herein above set forth, Plaintiff and/or the Class have suffered and will suffer harm, injury, and/or losses as herein above set forth.

79.     In doing the acts herein alleged, Defendants, and each of them, acted willfully, wantonly, with oppression, fraud, and/or malice, and with a conscious disregard of the rights and safety of others, as set forth herein.

80.     WHEREFORE, Plaintiff prays for judgment as set forth below.

### FIFTH CAUSE OF ACTION
### (Request for Monitoring of Contamination)

81.     Plaintiff re-alleges and repleads the foregoing paragraphs as though set forth fully herein.

82.     As a direct and legal result of the acts and omissions of the Defendants, causing or allowing or contributing to the discharge of hundreds of gallons of toxic crude oil into the San Pedro Bay, Plaintiff will further suffer further injury as a result of the environmental harm caused by the leak. Defendants should be required to provide sufficient funds to mitigate all harm flowing from their breach. Monitoring and testing procedures exist which make the detection and evaluation of marine life contamination possible and beneficial.

83.     Plaintiff and the Class have no adequate remedy at law in that monetary damages alone do not compensate for the continuing nature of the harm to them, and a

CLASS ACTION COMPLAINT

monitoring program which assures Plaintiff, the Class, the public, governmental stakeholders, and non-governmental stakeholders of the health and viability of the marine life and larger ecosystem of the Pacific Ocean, San Pedro Bay, and the surrounding environs in Los Angeles, Orange, and San Diego Counties California.

84.    On October 4, 2021, the PHMSA issued its CAO requiring Defendants to take certain corrective actions with respect to a rupture that occurred on the 16-inch Affected Pipeline that failed offshore near the cities of the Southern California coast.[3] However, without a court-approved monitoring program and a declaration of the rights of the Plaintiff and the Class to such a monitoring program, the health and viability of the San Pedro Bay marine and terrestrial ecosystem cannot be assured.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks this Court to enter judgment against Defendants as follows:

A. Enter an order certifying the Class requested by Plaintiff;

B. Enter a judgment in favor of Plaintiff and the Class, against Defendants, jointly and severally, for economic damages sustained by them by reason of Defendants' unlawful conduct;

C. Enter a judgment awarding Plaintiff and the Class punitive and/or other exemplary damages for Defendants' willful, reckless and wanton acts;

---

[3] Supra note 2.

CLASS ACTION COMPLAINT

D. Enter a judgment in favor of Plaintiff and the Class, against Defendants, jointly and severally, for the creation of a fund to monitor the marine habitat in the Pacific Ocean, San Pedro Bay, and the surrounding environs in Los Angeles, Orange, and San Diego Counties California in order to assure the short- and long-term health and viability of the coastal Southern California ecosystem and attached livelihoods;

E. Enter a judgment awarding Plaintiff and the Class injunctive relief, requiring that Defendants implement measures to prevent future oil spill events and mitigate the effects thereof, including, but not limited to, implementation of pre-booming requirements, mandatory pipeline inspections using the best available technology, spill warning systems, automatic shutoff systems, and structural spill mitigation.

F. Award Plaintiff and the Class pre-judgment and post-judgment interest, costs, expenses, including the costs of retaining expert witnesses, and attorneys' fees in this action; and

G. Such other further relief as this Court or a jury may deem proper and just.

CLASS ACTION COMPLAINT

Dated:  October 11, 2021

Respectfully Submitted,
JOSEPH SAVERI LAW FIRM, LLP

By:     /s/ Joseph R. Saveri
             Joseph R. Saveri

Joseph R. Saveri (State Bar No. 130064)
jsaveri@saverilawfirm.com
Steven N. Williams (State Bar No. 175489)
swilliams@saverilawfirm.com
Anna-Patrice Harris (State Bar No, 309022)
aharris@saverilawfirm.com
Christopher K.L. Young (State Bar No. 318371)
cyoung@saverilawfirm.com
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1000
San Francisco, California 94108
Telephone:  (415) 500-6800
Facsimile:   (415) 395-9940

Jeff S. Westerman (State Bar No. 94559)
jwesterman@jswlegal.com
**WESTERMAN LAW CORP.**
16133 Ventura Blvd., Suite 685
Encino, CA 91436
Telephone: (310) 698-7450

Stuart G. Gross
sgross@grosskleinlaw.com
**Gross & Klein LLP**
The Embarcadero
Pier 9, Suite 100
San Francisco, CA 94111
Telephone: (415) 671-4628 (x101)
Facsimile: (415) 480-6688

*Attorneys for Plaintiff,*
*Ketcham Tackle LLC and the Proposed Class*

CLASS ACTION COMPLAINT

# DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all claims so triable.

Dated:  October 11, 2021

Respectfully Submitted,
JOSEPH SAVERI LAW FIRM, LLP

By:     _/s/ Joseph R. Saveri_
Joseph R. Saveri

Joseph R. Saveri (State Bar No. 130064)
jsaveri@saverilawfirm.com
Steven N. Williams (State Bar No. 175489)
swilliams@saverilawfirm.com
Anna-Patrice Harris (State Bar No, 309022)
aharris@saverilawfirm.com
Christopher K.L. Young (State Bar No. 318371)
cyoung@saverilawfirm.com
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1000
San Francisco, California 94108
Telephone:  (415) 500-6800
Facsimile:   (415) 395-9940

Jeff S. Westerman (State Bar No. 94559)
jwesterman@jswlegal.com
**WESTERMAN LAW CORP.**
16133 Ventura Blvd., Suite 685
Encino, CA 91436
Telephone: (310) 698-7450

Stuart G. Gross
sgross@grosskleinlaw.com
**GROSS & KLEIN LLP**
The Embarcadero
Pier 9, Suite 100
San Francisco, CA 94111
Telephone: (415) 671-4628 (x101)
Facsimile: (415) 480-6688

_Attorneys for Plaintiff,_
_Ketcham Tackle LLC and the Proposed Class_

30

CLASS ACTION COMPLAINT